# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4893 | DATE | 3/12/2001 |
| CASE TITLE | Federal Trade Commission, et al. Vs. Med Resorts Intl, Inc., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Patricia Duckworth, Stewart Duckworth and James McGrenera's motions for intervention [123-1] and for relief from the stay are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | 7 | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | MAR 1 3 2001 | |
| ✓ | Notices mailed by judge's staff. | | | date docketed | 150 |
| | Notified counsel by telephone. | | | C.S. | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | 3/12/2001 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| IS | courtroom deputy's initials | | | IS | mailing deputy initials |
| | | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAR 1 3 2001

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION and COMMONWEALTH OF VIRGINIA, ex rel. Mark Earley, Attorney General of Virginia, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 00 C 4893 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| MED RESORTS INTERNATIONAL, INC., a Virginia corporation, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

James McGrenera and Patricia and Stewart Duckworth move pursuant to Federal Rule of Civil Procedure 24(a)[1] to intervene in the Federal Trade Commission and Commonwealth of Virginia's suit against an assemblage of companies, owned and operated by J. George Claveau, that sell or service vacation packages (collectively, these companies will be referred to as "Med Resorts").[2]  Or, in the alternative, McGrenera and the Duckworths ask this Court to grant them relief from the receivership stay so

---

[1]  Although McGrenera and the Duckworths stated in open court that their motions to intervene were pursuant to Rule 24(b), they withdrew those claims in their reply brief and instead stated that their motions to intervene were pursuant to Rule 24(a).  Accordingly, we only address the applicability of Rule 24(a).  (See Reply Movant Supp. Mot. Intervene at 2.)

[2]  These companies include Med Resorts International, Inc.; World Connections, Inc.; Mediterranean Resorts, Inc.; Destinations Unlimited of Delaware, Inc.; Bay Financial Services, Inc.; and V-Pac, Inc.  Claveau and Marianne Borden-Myers, an officer of some of the aforementioned companies, have also been named defendants in the suit.

that they can file separate actions against the receivership in state court. For the reasons that follow, McGrenera's and the Duckworths' motions to intervene and for relief from the stay are denied.[3]

# I.  Background

"If you're not happy, we're not happy!"  Perhaps that was one of the assurances given when McGrenera first heard from Med Resorts.  On that day, McGrenera (and presumably thousands of others) received an unsolicited telephone call from Med Resorts extending an invitation to attend a sales presentation.  Med Resorts hoped to provide McGrenera with the means of experiencing great vacations with a premiere vacation club.  It would do this, of course, at a discounted price.

For over twenty years, Med Resorts has offered short- and long-term vacation packages to consumers.  In exchange for a fee, anywhere from several hundred dollars to over ten thousand dollars depending on the vacation package, Med Resorts would promise to provide consumers with benefits such as discounted

---

[3]  The parties to the original proceeding consented to have this Court conduct any and all proceedings, including the entry of final judgment.  *See* 28 U.S.C. § 636(c); Local R. 73.1(b). This provides this Court with the power to rule on the instant motions to intervene and for relief from the stay.  *See id.; see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 171 F.3d 1083, 1089 (7th Cir. 1999) (holding that "the power to rule on motions to intervene is a necessary and proper incident of the magistrate judge's power to decide the underlying case").

airfare, certain travel rebates, and vacations around the world. Large inventory, affiliations with other vacation companies, and contracts with airlines and cruise lines, it was said, made this possible. The business was very profitable.

McGrenera, who already had rights to a timeshare in Hawaii, apparently grew tired of the Aloha State. Tempted by the sales pitch, McGrenera took Med Resorts up on the offer and attended the sales presentation.

After receiving what McGrenera now describes as the "hard sell," Med Resorts and McGrenera entered into a thirty-year contract. The contract entitled McGrenera to thirty one-week vacations, some complimentary Break-A-Way vacations,[4] up to five Quick Connections vacations per year,[5] and many other benefits, including the opportunity to take advantage of various promotional discounts and rebates. All of this for just $5,995, and the rights to McGrenera's one-week timeshare in Hawaii.

Obviously, the sales presentation was effective. Med Resorts convinced McGrenera of its solid reputation and impeccable service. Indeed, Med Resorts even promised McGrenera that he would be assigned a personal travel consultant to assist

---

[4] Break-A-Way vacations "consist of hotel accommodations for 2 persons for [a] vacation period ranging from 3 to 7 nights at popular resort areas." (Mot. Intervene Ex. C at 10.)

[5] Quick Connections vacations consist of vacation opportunities that are available only on very short notice. Generally, these vacation opportunities materialize only when there is excess inventory at certain resorts. (See Defs.' Mem. Law Opp'n to Pls.' Mot. Prelim. Inj. at 8.)

him in planning vacations "anywhere, anytime." Furthermore, in the event McGrenera became dissatisfied, Med Resorts agreed to provide McGrenera with one vacation week free. This was all part of Med Resorts's "Iron-Clad Guarantee."[6]

Unfortunately, things eventually turned sour. After going through some purported gymnastics to book vacations to Nevada and Wisconsin in 1998 and a cruise in 1999, McGrenera demanded a refund. Apparently all of McGrenera's vacations were alternative choices during off-season times; his first choices either were ignored or could not be fulfilled. Ultimately, McGrenera ended up expending his own funds to take vacations that he intended on taking through Med Resorts. In McGrenera's eyes, neither additional assurances nor free vacations could rectify the situation. He wanted a full refund.

---

[6] Bearing the slogan "If You're Not Happy, We're Not Happy!" the Iron-Clad Guarantee consists of the following:

If you are dissatisfied in any way with your accommodations, we'll provide you with an additional Break-A-Way of your choice, FREE!

* * * *

If at the time of ticketing you find a lower fare for identical dates, in the same class of service and [Med Resorts] can book/issue tickets, you will be ticketed at the lower fare and the difference will be refunded!

(Mot. Intervene Ex. C. at 11.)

From what we can tell, the Duckworths allege that they experienced a similar plight.[7] We surmise that the Duckworths received a similar unsolicited telephone call and attended a similar sales presentation. Like McGrenera, the Duckworths signed a thirty-year contract entitling them to thirty one-week vacations, some complimentary Break-A-Way vacations, access to Quick Connections vacations, and various other benefits. The total price for the Duckworths was $6,495.

For reasons unknown, the Duckworths also became dissatisfied with Med Resorts and demanded a full refund. The demand was conveyed to Med Resorts in a letter, approximately three months after the contract was signed. The Duckworths based their demand on misrepresentation like McGrenera but in the form of a violation of the Illinois Real Estate Time-Share Act, 765 ILCS 100/1-36, for failing to provide certain disclosures. Because these disclosures were not made, the Duckworths argued that Med Resorts could not hold them to the contract now that a refund demand was made.

Long before McGrenera and the Duckworths began demanding refunds, or even contracted with Med Resorts, the FTC and Virginia joined forces and began planning their own advance on Med Resorts. Essentially, this occurred because of numerous complaints trickling in from consumers resembling that of McGrenera and the Duckworths: misrepresentation, fraud, etc.

_____

[7] The Duckworths did not bother providing this Court with an account of the events leading up to the present dispute.

The FTC and Virginia's efforts culminated in the filing of a Complaint for Permanent Injunction and Other Equitable Relief in August 2000. The gravamen of the complaint charged Med Resorts with engaging in "unfair or deceptive acts or practices" in violation of section 5(a) of the Federal Trade Act. For relief, the FTC and Virginia sought a collection of equitable remedies including disgorgement, injunctive relief, an asset freeze, and the appointment of a receiver.

After the imposition of a Temporary Restraining Order and months of negotiations, Med Resorts and the FTC and Virginia entered into a Stipulated Preliminary Injunction with Asset Freeze and Appointment of Permanent Receiver. In addition to continuing the asset freeze and receivership, the agreement stayed all persons, even nonparties, from commencing suit against the receivership unless granted leave by this Court.[8] In part

---

[8]  The stay reads as follows:

Except by leave of this Court, during the pendency of the receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

a.   Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations . . . .

(Stipulated Prelim. Inj. Asset Freeze Appointment Permanent
(continued...)

because of the stay, the receivership has remained intact, allowing negotiations between the parties to continue toward final resolution.

In the meantime, McGrenera and the Duckworths find themselves in the following predicament: the Receiver will not give McGrenera and the Duckworths a refund because of the asset freeze, and McGrenera and the Duckworths cannot sue the Receiver for a refund because of the stay. Thus, the instant motions were filed.

## II.  Discussion

### A.  Motions to Intervene

Rule 24(a)(2) provides for intervention as of right where an application to intervene is timely made by a movant that has an interest relating to the subject matter of the underlying litigation, but only if that interest may be potentially impaired by disposition of the underlying action and it cannot be adequately protected by existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *see Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984). Failure to satisfy all of these requirements dictates denial of the motion. *See NAACP v. New York*, 413 U.S. 345, 369 (1973); *Wade v. Goldschmidt*, 673 F.2d 182, 185 n.4 (7th

---

[8](...continued)
Receiver at 22-23.)

Cir. 1982). The burden of satisfying these requirements falls on the movant. *See United States v. Texas E. Transmission Corp.,* 923 F.2d 410, 414 (5th Cir. 1991).

Procedurally, the requirements for filing a motion to intervene are unambiguous. Rule 24(c) requires the movant to serve a motion accompanied by a pleading to the parties as provided in Rule 5. Fed. R. Civ. P. 24(c). Some leniency is available under the Rule, but total dereliction of the Rule warrants dismissal of the motion. *See Shevlin v. Schewe,* 809 F.2d 447, 450 (7th Cir. 1987).

Here, the Duckworths never filed a pleading, nor did they endeavor to adopt the pleading of McGrenera. For this reason, the Duckworths' motion to intervene is denied. However, to fully address the issues presented, for the remainder of this decision we overlook the Duckworths' procedural oversight and address each of the substantive objections raised to McGrenera's and the Duckworths' motions to intervene.

### 1. Identification of an Interest

The Receiver first objects to intervention because McGrenera and the Duckworths have not identified "significant, protectable interests" in the underlying litigation. Identifying such an interest, as the parties point out, is required for intervention under Rule 24(a)(2). *See EEOC v. Ill. Dep't of Employment Sec.,*

6 F. Supp. 2d 784, 787 (N.D. Ill. 1998) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).

The Seventh Circuit describes this interest as "something more than a mere 'betting' interest but less than a property right." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380-81 (7th Cir. 1995). Because the analysis is highly fact-specific, comparison to other cases is of limited value. *See id.* at 1381.

All parties recognize that the core issue in the underlying litigation is whether Med Resorts defrauded certain consumers of millions of dollars. McGrenera and the Duckworths are potentially members of this consumer group. If the FTC and Virginia prove their case, then consumer contracts may be rescinded and money may be set aside to compensate consumers for their injuries. McGrenera and the Duckworths, who have already paid the full amount due under their contracts, would be eligible for these benefits.

Based on this relationship, it cannot be contested that McGrenera and the Duckworths have protectable interests in the subject matter of the underlying litigation. For McGrenera and the Duckworths, the resolution of the underlying litigation will directly and significantly affect their property rights to the thousands of dollars they have paid to Med Resorts. Simply put, the interests advanced here present the clearest case for intervention -- McGrenera and the Duckworths have legal claims

that could be made the bases of separate suits against Med Resorts in the underlying litigation. *See Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996); *see also FTC v. Am. Legal Distribs., Inc.*, 890 F.2d 363, 365-66 (11th Cir. 1989); *FTC v. Am. Telnet, Inc.*, 188 F.R.D. 688, 691 (S.D. Fla. 1999). Thus, McGrenera's and the Duckworths' motions to intervene survive the first attack.

### 2. Impairment of Interest

However, the same cannot be said for the second attack. As movants, McGrenera and the Duckworths must show that the disposition of the underlying litigation would impair their ability to protect their interests. Impairment exists where the proposed intervenor's purported interest could be decreased in value by a decision in the underlying litigation. *See, e.g., NL Indus., Inc. v. Sec'y of the Interior*, 777 F.2d 433, 435-36 (9th Cir. 1985). Additionally, "[i]mpairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). "The possibility of foreclosure is measured by the standards of stare decisis." *Am. Nat'l Bank & Trust Co. of Chi. v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989).

In this case, McGrenera and the Duckworths have not demonstrated that their ability to protect their interests could be impaired by the disposition of the underlying litigation. First, McGrenera and the Duckworths do not suggest that resolution of the underlying litigation could harm their interests, for example, by decreasing the value of their claims. Second, McGrenera and the Duckworths do not suggest that legal questions decided in the underlying litigation would have a negative res judicata effect on any subsequent lawsuit brought by them.

After all, the FTC and Virginia commenced the action against Med Resorts to protect consumers like McGrenera and the Duckworths. To protect -- not impair -- consumers' rights, the FTC and Virginia sought injunctive relief, an asset freeze, and the appointment of a receiver. This relief, which the FTC and Virginia instantly received, increased the likelihood that injured Med Resorts consumers would be compensated for their injuries. How these and other similar actions could result in "impairing" McGrenera's and the Duckworths' interests is left to the imagination.

The mere fact that the blanket stay temporarily precludes McGrenera and the Duckworths from commencing separate actions in state court does not change this result. *But see SEC v. Flight Transp. Corp*, 699 F.2d 943, 948 (8th Cir. 1983) (allowing intervention where a creditor's interests in its collateral could be impaired by the blanket stay). The stay maintains the status

quo. It has done precisely that for the last seven months.
Rather than decrease the value of McGrenera's and the Duckworths'
interests, the stay ensures that the value of those interests
will be maintained. Additionally, the stay provides the Receiver
with time to marshal the assets of Med Resorts so that consumers
can obtain the maximum amount of redress possible, assuming such
relief is available. In toto, the stay makes it easier for
McGrenera and the Duckworths to protect their interests, rather
than impair them.

Furthermore, as the parties opposing intervention point out,
if the FTC and Virginia prove their case and the stay is lifted,
McGrenera and the Duckworths will be able to file separate
actions in state court. If McGrenera and the Duckworths provided
evidence to the contrary, perhaps we would have a more difficult
determination.

3. Adequate Representation

McGrenera and the Duckworths have also failed to demonstrate
that their interests cannot be adequately represented by the FTC
and Virginia. Under Rule 24(a)(2), the movant need only show
that the representation of his interest "may be" inadequate. *See*
*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10
(1972). As such, the required showing is minimal. *See id.*

Nonetheless, this requirement is taken seriously because
intervention can impose substantial costs on the parties and

judiciary. *See Solid Waste Agency of N. Cook County*, 101 F.3d at 507-08. To avoid some of these costs, certain stumbling blocks must be overcome. For instance, where the interests of the movant and one of the original parties are the same -- where there is no conflict of interest -- adequacy of representation is presumed. *See id.* at 508. This is particularly true in actions brought by government agencies to protect the rights of would-be intervenors. *See, e.g., Am. Telnet, Inc.*, 188 F.R.D. at 691.

To rebut the presumption of adequate representation in this case, McGrenera and the Duckworths imply that the FTC and Virginia are only pressing outcomes favorable to Med Resorts consumers that have not paid their entire vacation contract price, while ignoring the interests of those who have paid their entire contract price, like McGrenera and the Duckworths. The argument not only highlights one of the most important distinctions advanced by the FTC and Virginia in the underlying litigation so far, but also McGrenera's and the Duckworths' minimal knowledge of those proceedings.

Since the commencement of the underlying litigation, the FTC and Virginia have insisted that Med Resorts compensate consumers in two ways: first, by providing injured consumers with the option of rescinding their contracts; and second, by establishing a redress fund whereby assets could eventually be allocated on a pro rata basis to injured consumers who have paid on their contracts. Both in and out of court, the FTC and Virginia have

zealously advanced both of these remedies, which clearly benefit both those who have paid very little of their contract price and those who have paid their entire contract price.

Oddly, McGrenera and the Duckworths never mention the redress fund in their brief (although they do mention the rescission remedy). If they did, it certainly would have been more difficult to explain how the FTC and Virginia may not adequately represent their interests.

Naturally, this would be a different case if McGrenera and the Duckworths presented some evidence of foot-dragging or collusion between the original parties. If that were the case, any presumption of adequate representation would certainly be rebutted, and inadequate representation would likely be found. *See Solid Waste Agency of N. Cook County*, 101 F.3d at 508; *see also Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 323 (7th Cir. 1995). But, as discussed, the FTC and Virginia have energetically, aggressively, and so far successfully conducted the underlying litigation.

### B.   Motions for Relief from the Stay

We next turn to McGrenera's and the Duckworths' motions for relief from the stay. There appearing to be no cases on point in the Seventh Circuit, all parties point to *SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980), to assist in resolving this issue.

In *Wencke*, a federal agency filed charges against a business for engaging in fraud and misrepresentation. After conducting a hearing, the district court held that the agency proved a prima facie case of fraud and misrepresentation and therefore granted injunctive relief which, among other things, placed the business in receivership and enjoined all parties from commencing suit except with leave of court. *See id.* at 1366-67.

Soon thereafter, a party filed a petition for relief from the stay so that it could enforce a state court judgment. After the district court denied the petition, an appeal followed. The appeal challenged the district court's power to impose the blanket stay and, in the alternative, its decision not to grant relief from the stay.

First, the Ninth Circuit held that the power to impose a blanket stay is a corollary of the inherent power of a court of equity to impose a receivership and grant other forms of ancillary relief. *See id.* at 1369-70. Then, the court agreed with the district court that the stay was necessary under the circumstances. *See id.* at 1372-73. Finally, the court determined that the district court did not abuse its discretion by denying the party's petition for relief from the stay. In making this determination, the court considered the following factors: whether continuance of the stay would maintain the status quo or cause the moving party to suffer substantial injury, the merit of the moving party's claim, and the time at

which the motion for relief was made. *See id.* at 1373-74; *see also SEC v. Universal Fin.*, 760 F.2d 1034, 1037-38 (9th Cir. 1985); *United States v. ESIC Capital, Inc.*, 685 F. Supp. 483, 485 (D. Md. 1988). Applying these factors to this case, we find that McGrenera and the Duckworths have not met their burden of proving that the receivership stay should be lifted.

At the outset, the need for a blanket stay in a case like this is obvious. Just seven months ago, the FTC and Virginia produced the findings of their investigation to this Court. Allegations of fraud and misrepresentation in nearly every aspect of Med Resorts's dealings with consumers were profuse. As a result, the Receiver spent many hours exploring transactions and other facets of the business so that consumers would suffer no additional harm. Had the Receiver also been required to conduct litigation -- possibly all over the country in state and federal forums -- he could not have performed his mandated duties, and any injured Med Resorts consumers would be worse off than they are today.

Now, back to the *Wencke* factors. First, it is clear that continuance of the stay would maintain the status quo. Presently, Med Resorts consumers are enjoying vacations, and Med Resorts is generating positive cash flow. Generally speaking, with the exception of the sales centers, which have all been closed, Med Resorts has remained intact under the receivership. At least for the near future, things should remain that way.

To the contrary, as the FTC and Virginia point out, the status quo could not be maintained if this Court permitted McGrenera and the Duckworths to bring separate actions in state court. Certainly, others would follow. Not only would the Receiver then have to take his attention away from other tasks, but the assets of the receivership estate would quickly be diminished.

McGrenera and the Duckworths do not even address this important point, nor do they present any evidence showing that they would suffer substantial injury if they were not granted relief from the stay. Presumably the only "injury" that McGrenera and the Duckworths would suffer stems from any delay in enforcing their rights. How McGrenera and the Duckworths determined that they would be better off if this Court started granting exceptions to the stay is difficult to comprehend.

Moving on to the second factor, the *Wencke* court proposed that as the receivership progresses the merits of the moving party's claim may loom larger in the balance. 622 F.2d at 1373-74. In other words, as time passes, the Receiver's administrative and investigative tasks should be completed and distributions to claimants should begin.

But here the stay has been in place for only a short time. McGrenera and the Duckworths do not contend that the Receiver has performed all of his duties or that the Receiver is ready to begin making distributions to injured consumers, assuming distributions are made. In contrast, many tasks still must be

- 17 -

performed.  Most important, assuming distributions are made, the Receiver has not yet presented this Court with the details of how to allocate assets to injured consumers as compensation (nor could he at this time).  Thus, this factor favors maintaining the stay as well.

Finally, the merits of McGrenera's and the Duckworths' claims must be considered.  We acknowledge that the Stipulated Preliminary Injunction with Asset Freeze and Appointment of Permanent Receiver, while not determinative of McGrenera's and the Duckworths' claims, makes it more likely that McGrenera and the Duckworths will prevail in future litigation.  The FTC and Virginia make this point.  Nevertheless, the fact that one of the *Wencke* factors tips in favor of McGrenera and the Duckworths is not determinative, especially when all of the others undoubtedly call for a continuation of the stay.

### III.  Conclusion

Although McGrenera and the Duckworths present sympathetic cases, we agree with the FTC, Virginia, and the Receiver that the motions for intervention and for relief from the stay must be denied.  Under the circumstances, it is not even a close call.

With respect to the motions to intervene, procedurally the Duckworths' motion is inadequate because a pleading was never submitted.  Substantively, McGrenera and the Duckworths have failed to prove that the disposition of the underlying litigation would impair their ability to protect their interests.  In

addition, McGrenera and the Duckworths have failed to prove that their interests may not be adequately represented by the FTC and Virginia. Their motions to intervene could be dismissed on either of these substantive grounds.

The motions for relief from the stay also lack sufficient evidentiary support. McGrenera and the Duckworths have failed to present any evidence that the stay would not maintain the status quo, nor have they presented any evidence showing that they would suffer substantial injury if the stay continues. In addition, after considering the facts, we are convinced that McGrenera's and the Duckworths' requests to modify the stay at this point in the receivership are premature.

Thus, for the reasons stated, McGrenera's and the Duckworths' motions for intervention and for relief from the stay are denied.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** March 12, 2001.

Copies have been mailed to:

MARK L. EARLEY, Esq.
Attorney General of Virginia
JENNIFER L. HARPER, Esq.
AMY H. SCHWAB, Esq.
NATALIE HARRIS, Esq.
Assistant Attorneys General
900 East Main Street
Richmond, VA  23219

DEBRA A. VALENTINE, Esq.
General Counsel
TODD M. KOSSOW, Esq.
GUY G. WARD, Esq.
KATHERINE ROMANO SCHNACK, Esq.
Federal Trade Commission
55 East Monroe Street
Suite 1860
Chicago, IL  60603

Attorneys for Plaintiffs

STEPHEN T. BOBO, Esq.
D'Ancona & Pflaum
111 East Wacker Drive
Suite 2800
Chicago, IL  60601

Temporary Receiver for Defendants,
Med Resorts International, Inc.;
World Connections, Inc.; Mediterranean
Resorts, Inc.; Destinations Unlimited
of Delaware, Inc.; Bay Financial
Services, Inc.; and V-Pac, Inc.

THOMAS M. DURKIN, Esq.
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL  60603

Attorney for Defendants

DONALD C. ALEXANDER, Esq.
Akin, Gump, Strauss, Hauer
  & Feld, L.L.P.
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036

Attorney for Defendant,
  J. George Claveau

THOMAS J. MAGILL, Esq.
Quarles & Brady, L.L.C.
500 West Madison Street
Suite 3700
Chicago, IL  60661

Attorney for Intervenor,
  Litchfield Financial
  Corporation